IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

MICHAEL NALE, )
)
    Plaintiff, )
)
v. ) CV- 98-B-0590-NW
)
WILLIAM J. HENDERSON, )
POSTMASTER GENERAL OF THE )
UNITED STATES POSTAL SERVICE,[1] )
et al. )
    Defendants. )

**ENTERED**

## MEMORANDUM OPINION

    Currently before the court is the Motion for Summary Judgment as to Remaining Claim filed by defendant William J. Henderson, Postmaster General of the United States Postal Service ("defendant" or "the Postal Service"). Plaintiff brings this action pursuant Title VII, 42 U.S.C. § 2000e-3, alleging that he was retaliated against for engaging in protected activity. Specifically, plaintiff contends that a deprivation of 4.86 hours of leave on June 4, 1994, and the issuance of a seven day suspension on June 14, 1994, were in retaliation for plaintiff having filed a grievance against his supervisors in 1993. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

### I. STATEMENT OF FACTS

    On March 8, 1993, plaintiff filed a grievance concerning harassment by his supervisors. This grievance was settled on January 13, 1994. (DX A11 at unnumbered 2-3.) Plaintiff, a city letter carrier assigned to the Main Post Office in Florence, Alabama, filed a formal EEO

---

[1] William J. Henderson replaced Marvin T. Runyon as Postmaster General of the United States Postal Service on May 16, 1998.



complaint (Agency Case No. 4-H-350-1371-94) dated September 1, 1994, wherein he claimed that discipline relating to incidents on June 3, 1994, and June 4, 1994, were in retaliation for having filed the March 8, 1993, grievance. (Martorell Decl., Attachment 1.)[2]

On June 3, 1994, plaintiff was involved in an argument with Postmaster Dan Gursky ("Gursky") about the postponement of a safety talk, wherein he used foul language that could be heard by customers at the window. (DX A2 at 1.) On June 4, 1994, plaintiff was "instruct[ed] by [his] supervisor Lea Hatton to 'carry his mail and be back on time.'" (DX A2 at 1.) Plaintiff questioned her orders, and became loud in tone and disruptive on the workroom floor. (DX A2 at 1.) Plaintiff was attempting to obtain thirty minutes of overtime for his route, which supervisor Hatton had denied by telling him to be back on time. (Pl.'s Brief at 3.) After the argument, Hatton ordered plaintiff to punch off the clock and go home. (DX A3 at unnumbered 1.)[3] Plaintiff left the workroom "muttering about talking to [his] lawyer." (DX A2 at 1.)[4]

Following these two incidents, plaintiff was disciplined for violating workplace rules.[5]

---

[2] Defendant filed the Declaration of Rafael Martorell with attached exhibits. References to this evidence will be cited as "DX" followed by the corresponding attachment.

[3] It is apparently for this incident that plaintiff claims he was required to take 4.86 hours of leave without pay.

[4] Plaintiff has filed roughly seventy EEO actions in his career. (Plaintiff's Evidentiary Submissions In Support of His Memorandum In Response to Defendant's Motion For Partial Summary Judgment ("PX") exhibit 2.)

[5] Section 666.51 of the Employee and Labor Relations Manual (ELM) states that "[e]mployees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual will nevertheless carry out the order and immediately file a protest in writing to the official in charge of the installation, or appeal through official channels." (DX A5.) Section 666.2 of the ELM states in pertinent part that employees must refrain from being obnoxious or offensive to others or from creating unpleasant working conditions. (DX A5.) Further section 112.25 of the City Delivery Carrier's Handbook (M-41) states that carriers must "[b]e prompt, courteous, and obliging in the performance of

Plaintiff was issued a seven day suspension on June 14, 1994, due to two incidents of improper conduct. (DX A2.) Supervisor Jackie Connors ("Connors"), who was not involved in the incidents on June 3rd or June 4th, issued the disciplinary action because Hatton was on annual leave. (DX A7 at unnumbered 1 & 2.) Other employees were disciplined for similar conduct. (DX A7 at unnumbered 2.) Connors has issued discipline to other employees for similar conduct. (*See* DX A7.)

Plaintiff filed a grievance after receiving the seven day suspension for misconduct. (DX A9.) The grievance was to heard before an independent arbitrator on January 12, 1995. (DX A9.) The arbitrator denied the grievance and found that "[t]hese events provide just cause for the disciplinary action and absent any past practices or procedure to the contrary, the Arbitrator does not have the authority to substitute his judgment for that of the service." (DX A9 at 2.) Specifically, the arbitrator found plaintiff's demand that Hatton give him a clear and precise order was not a request for instructions, but "was an attempt to evade her direction to deliver his mail and gain a commitment to provide overtime or excuse the non delivery of the route." (DX A9 at 2.)

EEOC Administrative Judge Clarence Bell ("the ALJ") issued Findings of Fact and Conclusions of Law dated October 23, 1997, recommending a finding of no discrimination. (DX A10 at 9.) The ALJ concluded that "[w]hile the discipline that was awarded to the Complainant constituted an adverse employment action, there is no causal connection between the adverse employment action and the [plaintiff's] prior EEO activity, due to remoteness." (DX A10 at 9.)

---

duties. Attend quietly and diligently to work and refrain from loud talking and the use of profane language." (DX A6.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

A.   **Plaintiff's Motion to Strike**

Plaintiff filed Plaintiff's Motion to Strike Certain Evidentiary Submissions Accompanying the Defendant's Motion for Summary Judgment as to the Remaining Claim.[6]

---

[6] References to Plaintiff's Motion to Strike Certain Evidentiary Submissions Accompanying the Defendant's Motion for Summary Judgment as to the Remaining Claim will

Plaintiff moves the court to strike Attachment four accompanying the Declaration of Rafael Martorell. (Pl.'s Motion to Strike at ¶ 1.) Attachment four consists of two unsworn witness statements from Postal Service employees Hollis Groom ("Groom") and Richard Hunnicut ("Hunnicut"). (DX A4 at unnumbered 1 & 2.) Plaintiff asserts that these statements fail to meet the requirements of Federal Rule of Evidence 901(a)[7] because they are not authenticated or identified properly, and the Postal Service has presented no evidence that the statements are what they are claimed to be. (Pl.'s Motion to Strike at ¶ 1.) Further, plaintiff asserts that these statements fail to meet the requirements of Federal Rule of Evidence 902(8)[8] because they are not self-authenticating, specifically, they are not in affidavit form and are not accompanied by an acknowledgment by a notary public or other officer authorized by law to make acknowledgments. (Pl.'s Motion to Strike at ¶ 1.)

Plaintiff also moves the court to strike Attachment eight accompanying the Declaration of Rafael Martorell. (Pl.'s Motion to Strike at ¶ 2.) Attachment eight consists of disciplinary letters issued by Connors to various Postal Service employees. (DX A8.) Plaintiff argues that the disciplinary letters should be stricken because they are irrelevant to any material issue in this

---

be cited as "Pl.'s Motion to Strike."

[7] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a).

[8] "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: Acknowledged Documents. Documents accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments." FED. R. EVID. 902(8).

case. (Pl.'s Motion to Strike at ¶ 2.)[9] Plaintiff contends that the only relevant discipline of similarly situated employees would be discipline issued by Hatton. (Pl.'s Motion to Strike at ¶ 2.) Plaintiff further contends that evidence of discipline issued by a supervisor other than Hatton does not have the tendency to make the existence of any fact of consequence to the determination more or less probable than it would be without the evidence. (Pl.'s Motion to Strike at ¶ 2.) Plaintiff asserts that the issue in this case is whether Hatton retaliated against plaintiff, and whether Connors disciplined other employees for similar conduct is not relevant. (Pl.'s Motion to Strike at ¶ 2.) Plaintiff also asserts that the discipline letters fail to meet the requirements of Federal Rule of Evidence 901(a) and 902(8). (Pl.'s Motion to Strike at ¶ 2.)

Defendant does not oppose plaintiff's motion to strike Attachment four. (Defendant's Reply to Plaintiff's Motion to Strike Certain Evidentiary Submissions ("Def.'s Reply to Pl.'s Motion to Strike") at 1.) Therefore, Attachment four to the Declaration of Rafael Mortorell is due to be stricken and the court will not consider it in ruling on defendant's Motion for Summary Judgment. However, defendant opposes plaintiff's Motion to Strike Attachment eight, the records of discipline issued by Connors. (Def.'s Reply to Pl.'s Motion to Strike at 1.) Defendant argues that the discipline letters issued by Connors are relevant. First, defendant argues that plaintiff named Connors as a discriminating official in his formal EEO complaint. (DX A1.) Second, defendant argues that the letters of discipline issued by Connors are relevant because plaintiff was the only employee who had acted in such an improper manner towards Hatton, and, therefore, she had not disciplined other employees for similar behavior. (Def.'s Reply to Pl.'s

---

[9] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

Motion to Strike at 2.) Defendant also contends that plaintiff's argument that the disciplinary records are not authenticated must be rejected. (Def.'s Reply to Pl.'s Motion to Strike at 2.) Defendant asserts that Connors authenticated the documents when she testified in her EEO Investigative Affidavit that she issued discipline to employees Inman, Harrinton, Childers, Frost, Sylvester, and other unnamed employees. (Def.'s Reply to Pl.'s Motion to Strike at 2; *see* DX A7 at unnumbered 2.) Defendant also asserts that as part of the EEO office's investigation of plaintiff's complaint, the investigator obtained copies of discipline referenced and issued by Connors and made them a part of the investigative file. (Def.'s Reply to Pl.'s Motion to Strike at 2.) The court agrees that the evidence has some relevance and is properly authenticated. Therefore, plaintiff's motion to strike Attachment eight is denied.[10]

### B.    Defendant's Motion for Summary Judgment

Plaintiff contends that his seven day suspension arising from altercations on June 3, and June 4, 1994, was in retaliation for filing his last EEO complaint in March of 1993. (Pl.'s Brief at 7.) Plaintiff also claims that he was also required to take 4.86 hours of leave without pay when his supervisor directed him to leave work on June 4, 1994.

Under Title VII, employees are protected from retaliation for opposition to unlawful employment practices or for making a charge, testifying, or participating in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000-3(a). In analyzing plaintiff's claims, the court is governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs,* 106 F.3d at 1527-28

---

[10] Even if the Motion to Strike were granted, defendant is due summary judgment for the reasons set forth in Section B of this Opinion.

(clarifying the standard to be applied under Eleventh Circuit jurisprudence). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant succeeds in carrying this burden, then the plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., discrimination or retaliation). *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *See Combs*, 106 F.3d at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). Pretext may be shown by "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Testerman v. EDS Technical Prods., Corp.*, 98 F.3d 297, 303 (7th Cir. 1995). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

In order to establish a prima facie case of retaliation, plaintiff must demonstrate, (1) that he engaged in a statutorily protected activity; (2) that defendant took some adverse employment action against him; and (3) that a causal connection exists between the two. *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992) (citations omitted); *Tipton*, 872 F.2d at 1494. In order to establish that a causal connection exists between the two events, plaintiff "need only show that the protected activity and the adverse action are not completely unrelated." *See, e.g, Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998). Plaintiff has failed to

establish a prima facie case of retaliation because he has not demonstrated a causal connection between his seven day suspension and the protected activity.

There is no evidence which would allow a reasonable factfinder to infer a causal connection between plaintiff's most recent protected conduct in March of 1993, and a seven day suspension issued on June 14, 1994, over one year later.[11] In addition, there is no evidence on which a reasonable juror could infer a causal connected between plaintiff's protected activity in March 1993 and the loss of 4.86 hours of time on June 4, 1994. No evidence, other than the order of occurrence, links these events. "The mere presence of a temporal sequence which shows [an adverse employment action] following the filing of the discrimination claim is, in and of itself, not sufficient to substantiate the requisite causal connection." *Thurman v. Robertshaw Control Co.*, 869 F. Supp. 934, 942 (N.D. Ga. 1994). Where there is no direct evidence linking the protected activity and the adverse employment action, the causal connection element may be established circumstantially by showing a close time-link between the adverse employment action and the protected activity. *See Baliaco v. University of Minnesota,* 737 F.2d 747, 749 (8th Cir. 1984). The longer the period between the two events, the stronger the inference that the

---

[11] Plaintiff refers to the signing of an EEO settlement on January 13, 1994, approximately five months prior to the issuance of the suspension. The issue of whether temporal proximity should be based on reaching an EEO settlement was considered by the Sixth Circuit in *Tennessee Valley Auth. v. Frady,* No. 96-3831, 1998 WL 25003, at *3 n.1 (6th Cir. Jan. 12, 1998), where the court stated:
> We believe that the date of the complaint . . . is the more appropriate date to use, because 1) unlike a settlement agreement, a complaint is clearly a protected activity . . . and 2) common sense dictates that employees are much more likely to be retaliated against for filing a complaint against their employer than for resolving the dispute with their employer by reaching a settlement agreement.

*Id.* Even if the signing date of the settlement agreement is viewed as the date of the most recent protected activity, the claim would still fail because the date of the settlement is too remote in time to establish the requisite causal connection.

adverse action was not improperly motivated.[12]

Plaintiff has not produced sufficient evidence upon which a reasonable juror could infer that the suspension about which he complains was improperly motivated. Plaintiff last engaged in protected activity on March 8, 1993. (DX A10 at 9.) Plaintiff received the allegedly retaliatory suspension on June 14, 1994, approximately fifteen months later. (DX A2.) Plaintiff has failed to present evidence of a "causal link" between his protected conduct and his suspension. Thus, no inference of causal connection can be drawn. Summary judgment is due to be granted because plaintiff cannot establish a prima facie case of retaliation.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that defendant's Motion for Summary Judgment as to Remaining Claim is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this 30th day of March, 2001.

SHARON LOVELACE BLACKBURN
United States District Judge

---

[12] *See Balletti v. Sun-Sentinel Co.,* 909 F.Supp. 1539, 1549 (S.D. Fla. 1995) (fact that plaintiff's discharge occurred six months after internal company complaint did not establish prima facie case of retaliatory discharge); *Mixon v. Dowagiac Nursing Home,* (866 F. Supp. 1047, 1057 (W.D. Mich 1994) (lapse of "several months" viewed as insufficient to infer causation); *Juarez v. Ameritech Mobil Communications, Inc.*, 746 F. Supp. 798, 804 (N.D. Ill. 1990) (six months between plaintiff's complaint and termination was too remote to establish causation); *Maldonado v. Metra*, 743 F. Supp. 563, 568 (N.D. Ill. 1990) (five-month period between protected activity and termination was too remote to establish causation); *Reeves v. Digital Equipment Corp.*, 710 F. Supp. 675, 677 (N.D. Ohio 1989) (no causal relation shown where three months passed between protected activity and adverse action); *Brown v. A.S.D. Computing Center*, 519 F. Supp. 1096, 116-17 (S.D. Ohio 1981) (termination four months after protected activity was too remote to establish causation).